# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

YUBA COUNTY WATER AGENCY, 1220 F
St, Marysville, CA 95901,

       Plaintiff,

v.

EILEEN SOBECK, Executive Director of the
California State Water Resources Control Board,
1001 I Street Sacramento, CA 95814, in her
official capacity,

E. JOAQUIN ESQUIVEL, Chair of the
California State Water Resources Control Board,
1001 I Street Sacramento, CA 95814, in his
official capacity,

DORENE D'ADAMO, Vice Chair of the
California State Water Resources Control Board,
1001 I Street Sacramento, CA 95814, in her
official capacity,

TAM M. DODUC, Member of the California
State Water Resources Control Board, 1001 I
Street Sacramento, CA 95814, in her official
capacity,

SEAN MAGUIRE, Member of the California
State Water Resources Control Board, 1001 I
Street Sacramento, CA 95814, in his official
capacity,

LAUREL FIRESTONE, Member of the
California State Water Resources Control Board,
1001 I Street Sacramento, CA 95814, in her
official capacity,

and CALIFORNIA STATE WATER
RESOURCES CONTROL BOARD, 1001 I
Street Sacramento, CA 95814,

       Defendants.

Civil Action No. _____

## COMPLAINT

## I.      NATURE OF THE ACTION

1.      Plaintiff Yuba County Water Agency ("YCWA") is the owner, operator, and Federal Energy Regulatory Commission ("FERC") licensee for the Yuba River Development Project ("YRDP"), a hydroelectric project located on the Yuba River.  The Federal Power Act ("FPA") grants FERC comprehensive planning authority over hydroelectric generating facilities, such as the YRDP, and broadly preempts conflicting state regulation of such facilities with limited exception.

2.      Pursuant to the FPA, the YRDP is required to renew, and is in the process of renewing, its FERC operating license.  As part of the relicensing process, YCWA is required by section 401 of the Clean Water Act ("CWA") to seek a water quality certification ("401 certification") from the California State Water Resources Control Board ("SWRCB") that the YRDP's discharges into navigable waters will comply with applicable provisions of the CWA, unless the SWRCB's authority to issue such a certification has been waived.

3.      This action arises from the ongoing attempt of Defendant Sobeck—the Executive Director of the SWRCB—and Defendants Esquivel, D'Adamo, Doduc, Maguire, and Firestone (collectively, "Defendant SWRCB Members")—members of the SWRCB—to impose and enforce through a 401 certification purportedly issued on July 17, 2020 ("Purported 401 Certification") conditions that exceed the state's delegated authority under CWA section 401, and that are thus preempted by the FPA.  Defendant Sobeck lacked the authority to issue the Purported 401 Certification pursuant to CWA section 401 because YCWA had no application for a 401 certification pending before the SWRCB.  Defendant Sobeck violated section 401 of the CWA by failing to provide adequate notice prior to the issuance of the Purported 401

Certification.  Moreover, the conditions imposed in the Purported 401 Certification exceed the scope of section 401 of the CWA in numerous ways, including that: (a) the conditions require YCWA to address circumstances that are not attributable to the YRDP and impacts that are not related to a point source discharge; (b) the conditions are not necessary to ensure compliance with existing water quality standards; and (c) the conditions allow the SWRCB and its staff to unilaterally modify the Purported 401 Certification and to enforce the certification conditions even though they would be conditions of the FERC license subject to FERC's exclusive supervision under the FPA.

4.      Defendants' attempts to impose and enforce the Purported 401 Certification conditions are preempted by and inconsistent with the FPA.  CWA section 401 provides a narrow exception to the broad authority reserved exclusively to FERC over hydroelectric projects, and the conditions are not properly imposed through CWA section 401.

5.      YCWA also brings this action to address Defendant Sobeck's violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  In violation of basic due process requirements, Defendant Sobeck issued the Purported 401 Certification without public process, public proceeding, or any opportunity for YCWA to address any of the information on which the Purported 401 Certification was based.

6.      The Purported 401 Certification also violates substantive due process by requiring YCWA to make changes to its operation of the YRDP and undertake costly actions that are not rationally related to a legitimate government interest because they (a) would make YCWA responsible for mitigating environmental conditions caused by the U.S. Army Corps of Engineers' ("USACE") Englebright Dam, historic hydraulic mining on the Yuba River, and/or

other diverters in the Yuba River watershed; (b) are unrelated to YCWA's own activities; and (c) do not address point source discharges.

7.     YCWA asks this Court to enjoin the enforcement of the Purported 401 Certification, to order Defendant Sobeck to withdraw the Purported 401 Certification, and to declare that Defendant Sobeck issued the Purported 401 Certification without authority to do so and that the Purported 401 Certification's conditions exceed the SWRCB's authority under the CWA and violate the U.S. Constitution.

8.     Pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), YCWA also asks this Court to declare that Defendants violated numerous California laws in issuing the Purported 401 Certification and that the Purported 401 Certification is not necessary to assure YCWA's compliance with "appropriate requirement[s] of State law."   33 U.S.C. § 1341(d).   Those violations of California law include, among others: (a) the issuance of the Purported 401 Certification by Defendant Sobeck without a quorum of the SWRCB Members ever voting to approve that action; (b) the issuance of the Purported 401 Certification without YCWA having an application for such a certification pending; (c) Defendants' failure to provide YCWA a fair hearing in violation of California Code of Civil Procedure section 1094.5; (d) Defendant Sobeck's failure to consider the Purported 401 Certification's effects on, among other factors, the disadvantaged communities that YCWA serves, the lower Yuba River's fish, and Yuba County's groundwater basins, in violation of California Code of Civil Procedure section 1094.5, Article X, section 2 of the California Constitution, and the Porter-Cologne Water Quality Control Act ("Porter-Cologne"); and (e) the failure of Defendant Sobeck to consider available evidence of the effects that the Purported 401 Certification would have on numerous relevant factors, including the extensive technical evidence that YCWA submitted in support of its

Petition for Reconsideration of the Purported 401 Certification, all in violation of California Code of Civil Procedure section 1094.5's requirement that findings be supported by evidence.

## II.      JURISDICTION

9.      This is an action for declaratory and injunctive relief for violations of the CWA, 33 U.S.C. § 1341, the U.S. Constitution, and California state law.

10.      This Court has jurisdiction over YCWA's federal claims pursuant to 28 U.S.C. § 1331.

11.      This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.      This action and the remedies sought are further authorized by 28 U.S.C. §§ 1651, 2201, and 2202, and by Federal Rule of Civil Procedure 57.

## III.      VENUE

13.      Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants filed the Purported 401 Certification with FERC, which is located in the District of Columbia; FERC issued an order determining that the SWRCB waived its right to issue a 401 certification because it did not timely act on YCWA's application for a 401 certification and instead insisted that it be withdrawn;[1] and the Purported 401 Certification contains requirements that, in the event FERC's waiver determination is overturned, will become conditions on a federal license that FERC will issue in the District of Columbia.[2]

---

[1] FERC's waiver decision is currently under review by the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit"). *Cal. State Water Res. Control Bd. v. FERC*, No. 20-72782 (9th Cir. filed Sept. 17, 2020) and *S. Yuba River Citizens League v. FERC*, No. 20-72800 (9th Cir. filed Sept. 18, 2020) (consolidated).

[2] Plaintiff is also commencing litigation against Defendants in the Superior Court of California, County of Fresno, challenging Defendants' failure to comply with federal and state law on both procedural and substantive grounds in issuing the Purported 401 Certification.

# IV.   PARTIES

**A.**   **Plaintiff**

14.   Plaintiff YCWA is a public agency specifically created by the State of California to address the "water problems in the County of Yuba" through "countywide water conservation, flood control and development of water resources," and wherein the enactment of that "special law is necessary for the conservation, development, control and use of said water for the public good and for the protection of life and property therein."  1959 Cal. Stat. 2798; Cal. Water Code App. § 84-26.  In the late 1960s, to reduce risk of flooding and to provide water supply for Yuba County, YCWA financed and built the YRDP.  YCWA is the FERC licensee, owner, and operator of the YRDP, located on the Yuba River.

15.    YCWA has sought to address the county's water problems through the construction and operation of the YRDP.  YCWA's operation of the YRDP provides reliable surface water supplies for the county and addresses flooding concerns by reducing peak flood flows.  YCWA's operation of the YRDP has improved conditions for salmon and steelhead in the lower Yuba River.  YCWA must continue to operate the YRDP to address the county's water problems and to sustainably manage the groundwater basin on which most Yuba County public water supplies depend.

16.   To continue its operation of the YRDP, YCWA is seeking a new 50-year license from FERC to operate the YRDP to generate hydroelectricity, provide reliable water supplies, and continue to benefit the river's fish.  YCWA has spent years in FERC's relicensing process, in hundreds of meetings and conference calls with state and federal agencies and stakeholders, and has spent tens of millions of dollars on different studies, not limited to environmental studies, in order to support its relicensing application.

17.     The Purported 401 Certification for the FERC relicensing of the YRDP imposes conditions and obligations on YCWA's operation of the YRDP that will significantly impair YCWA's ability to continue to do this work for the people of Yuba County.  The conditions imposed have the potential to cost YCWA at least $500 million, and potentially over $1 billion, over the next 50 years.  The Purported 401 Certification attempts to compel YCWA to shoulder primary responsibility for improving fisheries habitat in the lower Yuba River, even though the Purported 401 Certification's terms may actually damage fish habitat by, among other things, causing water temperatures to more frequently exceed key thresholds for salmon populations. The Purported 401 Certification presents a dangerous financial risk to YCWA and the communities it serves, including disadvantaged communities, by potentially increasing YCWA's annual expenses and decreasing its hydroelectric and water-sale annual revenues by millions of dollars.

**B.     Defendants**

18.     Defendant SWRCB is, and at all relevant times has been, a board of the State of California, created by the Legislature through its adoption of section 175 of the California Water Code.  The SWRCB is responsible for the adjudicatory and regulatory functions of the state in the field of water resources.   Cal. Water Code § 174.   The SWRCB is the state agency responsible for CWA section 401 certifications in California.  *Id.* § 13160.   The SWRCB purports to have delegated authority to act on applications for 401 certification to the Executive Director.  Cal. Code Regs. tit. 23, § 3838(a).

19.     Defendant Eileen Sobeck is the Executive Director of the SWRCB. Defendant Sobeck formulated, issued, and signed the Purported 401 Certification.  Defendant Sobeck is being sued as an individual in her official capacity.

20.     Defendant E. Joaquin Esquivel is the Chair of the SWRCB.  Defendant Esquivel was the Chair and one of the five appointed members of the SWRCB at all relevant times alleged herein.  Defendant Esquivel purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.  Defendant Esquivel is being sued as an individual in his official capacity.

21.     Defendant Dorene D'Adamo is the Vice Chair of the SWRCB. Defendant D'Adamo was the Vice Chair and one of the five appointed members of the SWRCB at all relevant times alleged herein.  Defendant D'Adamo purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.   Defendant D'Adamo is being sued as an individual in her official capacity.

22.     Defendant Tam M. Doduc is a member of the SWRCB.  Defendant Doduc was one of the five appointed members of the SWRCB at all relevant times alleged herein. Defendant Doduc purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.  Defendant Doduc is being sued as an individual in her official capacity.

23.     Defendant Sean Maguire is a member of the SWRCB.  Defendant Maguire was one of the five appointed members of the SWRCB at all relevant times alleged herein. Defendant Maguire purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.  Defendant Maguire is being sued as an individual in his official capacity.

24.     Defendant Laurel Firestone is a member of the SWRCB.  Defendant Firestone was one of the five appointed members of the SWRCB at all relevant times alleged herein. Defendant Firestone purports to have delegated all authority to issue 401 certifications to Defendant Sobeck.  Defendant Firestone is being sued as an individual in her official capacity.

## V.     FACTUAL BACKGROUND

### A.     <u>The Project</u>

25.     Plaintiff YCWA owns and operates the YRDP, an approximately 362-megawatt hydroelectric project located in northern California in the western Sierra Nevada mountains and their foothills.

26.     The original FERC license for the YRDP was issued by the Federal Power Commission (FERC's predecessor agency) on May 16, 1963 and expired on April 30, 2016. *Yuba Cty. Water Agency*, 29 FPC 1002, *order on reh'g*, 30 FPC 1610 (1963).  YCWA currently operates the YRDP under annual licenses automatically issued by FERC from year to year, under section 15(a)(1) of the FPA.  16 U.S.C. § 808(a)(1).

27.     The YRDP facilities are located on the main stem of the Yuba River, Middle Yuba River, North Yuba River, and Oregon Creek—a tributary to the Middle Yuba River.  The Yuba River is a tributary to the Feather River and is part of the Sacramento River Basin.

28.     There are three developments at the YRDP:

a.     New Colgate Development:  At the New Colgate Development, water impounded by Our House Diversion Dam is conveyed to Oregon Creek through the Lohman Ridge Diversion Tunnel.  From there, water impounded by the Log Cabin Diversion Dam is conveyed to New Bullards Bar Reservoir through the Camptonville Diversion Tunnel.  Water is conveyed through New Bullards Bar Dam to New Colgate Powerhouse via the New Colgate Power Tunnel and Penstock.

b.     New Bullards Bar Minimum Flow Development:  Water from the New Bullards Bar Reservoir is conveyed to the New Bullards Bar Minimum Flow Powerhouse, which discharges directly into the North Yuba River, downstream of New Bullards Bar Dam.

c.      Narrows 2 Development:  Water from Englebright Reservoir is conveyed to the Narrows 2 Powerhouse penstock, which discharges into the Yuba River downstream of Englebright Dam.

29.      The FERC project boundary currently encompasses 7,815.2 acres, of which YCWA owns 3,149.3 acres.

30.      In the 1800s, extensive hydraulic mining occurred in the Yuba River watershed, with large volumes of water used to blast away hillsides to extract gold deposits, causing the discharge of 684 million cubic yards of gravel and debris to flow into the Yuba River System— more than triple the volume excavated during construction of the Panama Canal.  The debris that resulted from hydraulic mining operations, including mercury used to extract gold, obliterated the lower Yuba River's original channel and, as a result, destroyed much of the riparian vegetation along the river, and had a serious adverse effect on the quality of Chinook salmon and steelhead habitat decades before YCWA built the YRDP in the mid- to late-1960s.

31.      The USACE's Englebright Dam (located outside the FERC project boundary but adjacent to the Narrows 2 Powerhouse) and Daguerre Point Dam (located on the mainstem Yuba River downstream of Englebright Dam) were constructed by the California Debris Commission in 1941 and 1906, respectively, to trap sediment derived from mining operations in the Yuba River watershed and prevent it from flowing downstream.  Those two federal dams predated YCWA's construction of the YRDP by over 25 years.

32.      Since its completion in 1941, the USACE's Englebright Dam has completely blocked the passage of Chinook salmon and steelhead to the upper Yuba River watershed.  At Daguerre Point Dam, two fish ladders, one located at each end of the dam, were reconstructed by the USACE and the State of California in 1965 after severe damage was incurred during high

10

flood flows.  The reconstructed ladders, which continue to exist today, may delay or prevent upstream passage of Chinook salmon and steelhead due to antiquated design, as well as maintenance issues.

33.     The San Francisco Bay/Sacramento-San Joaquin Delta Estuary ("Bay-Delta"), located downstream of the YRDP, is regulated by the SWRCB through the Water Quality Control Plan for the San Francisco Bay/Sacramento-San Joaquin Delta Estuary ("Bay-Delta Plan"), which establishes water quality objectives to protect beneficial uses of water in the Bay-Delta.  Water quality conditions in the Bay-Delta are attributable to numerous other diverters in the watershed.

**B.     The FERC Relicensing of the Project**

34.     On April 28, 2014, YCWA filed an application for a new FERC license to operate the YRDP.

35.     After filing its application, YCWA reached agreement with federal and state resource agencies on more than 30 protection, mitigation, and enhancement measures to be incorporated into the new license.

36.     On June 5, 2017, YCWA filed an amended license application, including YCWA's proposed license conditions that reflect the settled protection, mitigation, and enhancement measures.

37.     FERC issued a Draft Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act on May 30, 2018.  FERC and USACE issued the Final EIS on January 2, 2019.  The Final EIS concluded that a number of factors have contributed to the degradation of anadromous fish habitat and riparian vegetation development in the Yuba River Basin, including mining in the floodplain and river channel as well as blocked or impaired access to historical spawning and rearing habitat at other hydroelectric projects and water diversions in

11

the basin.  Final Environmental Impact Statement for the Yuba River Development Project at 3-230, 3-305, FERC Project No. 2246-065 (Jan. 2, 2019).

C.     **YCWA's Application to the SWRCB for 401 Certification**

38.     YCWA's filing of the FERC license application triggered a requirement to apply for a CWA section 401 certification, which would be required for a new FERC license unless the SWRCB waived its authority to issue such a certification.

39.     On August 24, 2017, YCWA filed an application for a 401 certification with the SWRCB pursuant to CWA section 401, and the SWRCB received the application on the same day.

40.     The SWRCB issued a public notice of YCWA's 2017 application for a 401 certification on September 21, 2017.

41.     Pursuant to CWA section 401, the SWRCB had one year to act on the 401 certification request.

42.     In a July 25, 2018 email to YCWA, SWRCB staff directed YCWA to withdraw and resubmit its application as soon as possible.

43.     On August 3, 2018, YCWA withdrew and resubmitted its application for 401 certification.

44.     On January 25, 2019, the U.S. Court of Appeals for the D.C. Circuit issued a decision in *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019), holding that a state and an applicant's agreement to withdraw and refile the same 401 certification request does not trigger a new statutory review period and the state waives the 401 certification requirement if it does not act within one year.

45.     On July 31, 2019, Defendant Sobeck, the SWRCB's Executive Director, denied YCWA's application without prejudice.  A copy of the denial letter is attached hereto as Exhibit 1.

46.     YCWA did not file a new request for 401 certification.

47.     On August 22, 2019, YCWA filed a request for a FERC determination that the SWRCB waived its certification authority for the relicensing of the YRDP.

48.     On May 21, 2020, FERC issued an Order finding that the SWRCB had waived its 401 certification authority under section 401 of the CWA.  *Yuba Cty. Water Agency*, 171 FERC ¶ 61,139 (2020).

49.     On June 22, 2020, the SWRCB filed a request for rehearing of FERC's waiver determination and attached a draft 401 certification to its rehearing request.

50.     On July 21, 2020, FERC issued an Order Denying Rehearing of its waiver determination.  *Yuba Cty. Water Agency*, 172 FERC ¶ 61,080 (2020).

51.     On September 17, 2020, the SWRCB filed a Petition for Review of FERC's waiver determination before the Ninth Circuit.  *Cal. State Water Res. Control Bd. v. FERC*, No. 20-72782 (9th Cir. filed Sept. 17, 2020).  On September 18, 2020, South Yuba River Citizens League, California Sportfishing Protection Alliance, Friends of the River, and Mother Lode Chapter of the Sierra Club filed a separate Petition for Review of FERC's waiver determination before the Ninth Circuit.  *S. Yuba River Citizens League v. FERC*, No. 20-72800 (9th Cir. filed Sept. 18, 2020).  The petitions have been consolidated by the Ninth Circuit.  YCWA has intervened in defense of FERC's waiver determination.

D.     **Defendant Sobeck's Issuance of the Purported 401 Certification**

52.     After FERC issued the waiver determination on May 21, 2020, SWRCB staff consulted with entities other than YCWA regarding Defendant Sobeck's potential issuance of a

401 certification, including the substance of matters that were incorporated into the final Purported 401 Certification.  The communications continued through July 2020.

53.     The entities with whom SWRCB staff consulted while preparing the Purported 401 Certification included the Foothill Water Network ("FWN").   FWN is a collection of environmental groups that includes the Mother Lode Chapter of the Sierra Club, a non-profit organization.  Based on information and belief, Andrew Sawyer, the SWRCB's chief water-right attorney, is and was (at all times relevant herein) also an officer, director, or other representative of the Mother Lode Chapter of the Sierra Club elected by that chapter's members.  Based upon information and belief, Mr. Sawyer participated in Defendant Sobeck's preparation of the Purported 401 Certification by supervising the work of SWRCB staff counsel Marianna Aue on the Purported 401 Certification, while Mr. Sawyer also was an elected representative of the Mother Lode Chapter of the Sierra Club.

54.     SWRCB staff and Defendant Sobeck did not contact YCWA while they were developing the Purported 401 Certification and gave YCWA no opportunity to rebut, address, or even know of information that they were considering during that development period.

55.     On July 13, 2020, YCWA sent the SWRCB a letter confirming that it had no application for a 401 certification pending.  YCWA further notified the SWRCB that, to the extent the SWRCB believed YCWA had a pending application, YCWA withdrew the same.  YCWA also inquired as to why the SWRCB had, in its June 22, 2020 filing with FERC, represented that it was providing a draft 401 certification.  No response was provided.

56.     The SWRCB's regulations purport to delegate authority to the Executive Director, Defendant Sobeck, to "take all actions" concerning all 401 certifications, "including issuance and denial of certification."   Cal. Code Regs. tit. 23, § 3838(a).  By their actions and inactions,

Defendant SWRCB Members purport to delegate that authority to Defendant Sobeck on an ongoing basis.

57.     On July 17, 2020, Defendant Sobeck issued the Purported 401 Certification for the YRDP relicensing on behalf of the SWRCB.  The SWRCB failed to conduct a hearing—or any public process at all—before Defendant Sobeck issued the Purported 401 Certification. Although the SWRCB issued a public notice of YCWA's 2017 application for a 401 certification, that notice was no longer effective in 2020 because Defendant Sobeck, on behalf of the SWRCB, had previously denied YCWA's application without prejudice in 2019.

58.     YCWA received no reasonable, or even written, notice that Defendant Sobeck was considering issuing the Purported 401 Certification on behalf of the SWRCB, having only been told orally *the day before* that Defendant Sobeck would be issuing that document. Defendant Sobeck provided YCWA with no opportunity to review or comment on a draft of the Purported 401 Certification before Defendant Sobeck issued it.

59.     The SWRCB was, and all individual Defendants in their official capacities were, required to conduct environmental review under the California Environmental Quality Act ("CEQA") prior to and in connection with the issuance of the Purported 401 Certification.  Cal. Pub. Res. Code §§ 21002, 21002.1, 21080(a), 21081.  All of the Defendants failed to comply with this obligation.

60.     Condition 23 of the Purported 401 Certification provides that it

shall become effective upon the earliest of: a grant of rehearing of FERC's May 22, 2020 order finding waiver of the [SWRCB's] water quality certification authority; issuance of a judicial order overturning that order; or issuance of another judicial or administrative action finding that FERC improperly found waiver of the [SWRCB's] certification authority.

Condition 23 also states that, "[u]nless and until such action overturning FERC's finding of a waiver, this certification shall not be considered a final action for purposes of Water Code

section 13160 regarding reconsideration or for administrative review."  However, on July 20, 2020, the SWRCB transmitted the Purported 401 Certification to FERC.  The Purported 401 Certification transmitted to FERC is labeled "Final Water Quality Certification."  The Purported 401 Certification is attached hereto as Exhibit 2.

61.     The Purported 401 Certification includes 50 conditions.  Pursuant to such conditions, and without holding any evidentiary hearing, SWRCB staff could order YCWA to, among other things: (1) comply with streamflow standards in what is currently a proposed amendment to the Bay-Delta Plan that, if applied to YCWA as proposed, would require YCWA to pass 55 percent of unimpaired flows through the YRDP, which would significantly affect YCWA's ability to store and use such flows for water supply and power generation (Conditions 1, 27, 31, and 32); (2) implement upstream and downstream fish passage over or around the USACE's 273-foot Englebright Dam in addition to YCWA's own 645-foot high New Bullards Bar Dam at an enormous cost with a highly uncertain likelihood of success (Condition 20); (3) mitigate for impacts caused by historic hydraulic mining that long predated the YRDP by restoring and enhancing juvenile salmonid rearing habitat in the lower Yuba River (Condition 12); (4) close Lohman Ridge Tunnel to water conveyances during certain time periods with questionable environmental benefit and with an economic impact of $22 million over the term of the new license (Condition 6); and (5) utilize the upper intake at New Bullards Bar Reservoir for the New Colgate Powerhouse in the spring months with no benefits to fish but with an economic impact of $55 million over the term of the new license (Condition 7).  In addition, the Purported 401 Certification includes conditions that attempt to regulate upstream operations of the YRDP such as recreational activities and sediment management that are unrelated to YRDP discharges or whether those discharges comply with existing state water quality requirements.

62.     YCWA estimates that the Purported 401 Certification's conditions could cost YCWA at least $500 million, and perhaps as much as $1 billion, through a combination of increased costs and lost revenues, over the anticipated term of a new 50-year license.

63.     The Purported 401 Certification's conditions could potentially impose hundreds of millions of dollars in additional costs on YCWA and the many disadvantaged communities it serves, if the SWRCB were to require YCWA to move salmon and other fish above the USACE's Englebright Dam, which is currently an impassable fish barrier.

**E.     YCWA's Challenges to the Purported 401 Certification**

64.     On August 14, 2020, YCWA filed a Petition for Reconsideration of the Purported 401 Certification with the SWRCB. The Petition for Reconsideration is attached hereto as Exhibit 3.  Therefore, within 30 days of having received the Purported 401 Certification, YCWA filed the Petition for Reconsideration in compliance with California Code of Regulations, title 23, section 3867.  In the Petition for Reconsideration, YCWA requested a formal hearing and objected to any informal hearings on the Purported 401 Certification for FERC's relicensing of the YRDP.

65.     On August 21, 2020, YCWA filed a copy of the Petition for Reconsideration of the Purported 401 Certification with FERC.

66.     The most stringent interpretation of the applicable statute, California Water Code § 13330(a), would indicate that the SWRCB and the Defendant SWRCB Members had until October 15, 2020 to grant or deny YCWA's Petition for Reconsideration.

67.     By October 15, 2020, the SWRCB and the Defendant SWRCB Members failed to act on YCWA's Petition for Reconsideration of the Purported 401 Certification.

68.     Through its Petition for Reconsideration, YCWA exhausted the only administrative remedy that was available to it.

69.     On November 12, 2020, YCWA provided notice of this complaint, including the CEQA claim, to the SWRCB, in compliance with California Public Resources Code section 21167.5.  A true and correct copy of the notice with proof of service is attached hereto as Exhibit 4.

70.     In pursuing this action, which involves the enforcement of important rights affecting the public interest, YCWA will confer a substantial benefit on the public, including the citizens of Yuba County, and therefore will be entitled to an award of reasonable attorney fees pursuant to California Code of Civil Procedure section 1021.5 and Government Code section 800.

## VI.     LEGAL BACKGROUND

### A.     Federal Power Act

71.     The FPA represents a congressional intention to establish "a broad federal role in the development and licensing of hydroelectric power." *California v. FERC*, 495 U.S. 490, 496 (1990).

72.     The FPA establishes "a complete scheme of national regulation" to "promote the comprehensive development of the water resources of the Nation," *First Iowa Hydro-Elec. Coop. v. FPC*, 328 U.S. 152, 180 (1946), and grants FERC "comprehensive planning authority" over the Nation's hydropower, including the licensing of hydroelectric generating facilities, *California v. FERC*, 495 U.S. at 506.

73.     The FPA gives FERC the authority to issue licenses for dams (such as the YRDP), to generate electric power at a dam or other project works on navigable waters, federal lands or reserves, and non-navigable streams which affect interstate or foreign commerce. 16 U.S.C. § 797(e).

74.     Licenses may be issued for a maximum of 50 years.  *Id.* § 799.  Section 6 of the FPA provides that a license, once issued, "may be revoked only for the reasons and in the manner prescribed under the provisions of this chapter, and may be altered or surrendered only upon mutual agreement between the licensee and the Commission."  *Id.*

75.     Once an initial license is set to expire, the project operator must apply for a new license through the relicensing process.  *Id*. § 808(a).  During relicensing, FERC evaluates the project and determines whether continued project operation is in the public interest and, if so, under what conditions.  *Id.*

76.     Section 10(a) of the FPA authorizes FERC to issue licenses subject to the conditions that FERC deems best suited for power development and other public uses of the waters.  *Id.* § 803(a).

77.     States lack any "veto power" or inherent sovereign power over federally licensed hydroelectric projects.

**B.     Clean Water Act**

78.     Hydroelectric facilities licensed under the FPA are subject to CWA section 401 water quality certification requirements.

79.     Section 401 of the CWA requires all applicants for a federal license or permit to obtain a 401 certification from the applicable state agency prior to issuance of any federal license or permit that may result in a discharge to navigable waters.  The 401 certification required pursuant to section 401 of the CWA is ancillary to other federal statute licensing requirements.

80.     A state certifying agency's authority to issue or deny a 401 certification for a federal license or permit commences upon receipt of that federal license or permit applicant's request for certification.  40 C.F.R. § 121.7.  "Th[e] language [of CWA section 401(a)(1)] clearly expresses a congressional intent to place the burden of requesting a state water quality

certification on the license applicant." *State of North Carolina v. FERC*, 112 F.3d 1175, 1184 (D.C. Cir. 1997).

81.     If the state fails or refuses to act on a request for 401 certification within one year after receipt of such request, the 401 certification requirement is waived with respect to such federal license or permit.  33 U.S.C. § 1341(a)(1).

82.     CWA section 401(a)(1) requires states to "establish procedures for public notice in the case of all applications for certification." *Id.*  "[B]y implication, section 401(a)(1) also requires states to *comply* with their public notice procedures." *City of Tacoma, Wash. v. FERC*, 460 F.3d 53, 68 (D.C. Cir. 2006) (emphasis in original).

83.     A 401 certification is only required for an applicant for a federal license or permit to conduct an activity that may result in a discharge to navigable waters.  33 U.S.C. § 1341(a).

84.     Section 401 of the CWA provides that a state may grant a water quality certification with limitations or requirements, which will become conditions on the federal license. *Id.* § 1341(d).  Section 401 limits states' power to impose conditions by providing that states may only impose those conditions "necessary" to assure that the applicant "will comply with any [1] applicable effluent limitations and other limitations, under [CWA section 301 or 302], [2] standard of performance under [CWA section 306], or [3] prohibition, effluent standard, or pretreatment standard under [CWA section 307], and with any [4] other appropriate requirement of State law . . . ." *Id.*

85.     If a state issues a valid 401 certification for a hydroelectric facility subject to certain conditions, FERC must include those conditions in its license.

86.     The U.S. Environmental Protection Agency ("EPA") is the federal agency charged with administering the CWA.

87.     On July 13, 2020, the EPA published a final rule, interpreting section 401 of the CWA ("Final Rule").  Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020).

88.     Under the Final Rule, the scope of a 401 certification "is limited to assuring that a *discharge* from a Federally licensed or permitted activity will comply with *water quality requirements*." 40 C.F.R. § 121.3 (emphasis added).

89.     "Discharge" is defined as "a discharge from a point source into a water of the United States."  *Id.* § 121.1(f).  Conditions imposed under CWA section 401 that regulate "the activity as a whole," rather than the discharge itself, are beyond the scope of section 401.  85 Fed. Reg. at 42,251.

90.     "Water quality requirements" are defined as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." 40 C.F.R. § 121.1(n).

**C.     California Environmental Quality Act**

91.     CEQA imposes certain obligations on public agencies to review, analyze, and identify the significant effects of a proposed project and any feasible alternatives or mitigation measures that will avoid or substantially lessen such significant effects.  *See, e.g.*, Cal. Pub. Res. Code §§ 21002, 21002.1, 21080(a), 21081.

92.     The SWRCB is a public agency within the meaning of CEQA.  The individual Defendants are responsible for ensuring that the SWRCB acts in compliance with CEQA.

93.      The SWRCB's issuance of a water quality certification meets the requirements of a project that is subject to CEQA review.

D.     **California Water Code**

94.     The SWRCB is created by, and generally governed by, portions of the California Water Code.

95.     Water Code section 175 specifies that the SWRCB consists of five members with specific qualifications and experience, each of whom is appointed by the Governor. The five appointed members of the SWRCB, which currently are the Defendant SWRCB Members, are clothed with a public trust to exercise their judgment and discretion.

96.     Under Water Code sections 181 and 183 and other statutes, a quorum of the SWRCB members must vote to approve an action for it to be an action of the SWRCB, unless a statute authorizes the SWRCB to delegate its authority to an individual member or its staff.

97.     Water Code section 181 states that "[t]hree members of the board shall constitute a quorum for the purpose of transacting any business of the board."

98.     Water Code section 13160 authorizes the SWRCB to issue 401 certifications under the CWA.

99.     No statute expressly authorizes the SWRCB to delegate the issuance of 401 certifications for FERC's relicensing of hydroelectric projects under the FPA.

100.     Water Code section 13330 provides that any party aggrieved by a decision or order of the SWRCB under that division of the Water Code may obtain judicial review of the same by filing a petition for writ of mandate under California Code of Civil Procedure section 1094.5.  Water Code section 13160, under which the SWRCB issues 401 certifications, is part of the division of the Water Code to which Water Code section 13330 applies.

E.     **Bagley-Keene Open Meeting Act**

101.     The Bagley-Keene Open Meeting Act, Cal. Gov't Code § 11120 et seq. ("Bagley-Keene"), states California's open-meeting requirements for state bodies.

102.    The SWRCB is a "state body" to which Bagley-Keene applies.  Cal. Gov't Code § 11121(a).

**F.    California Code of Civil Procedure**

103.    Water Code section 13330 states that Code of Civil Procedure section 1094.5(e) generally will govern the courts' consideration of petitions for writ of mandate brought under Water Code section 13330.

104.    Under Code of Civil Procedure section 1094.5(b), an administrative order or decision is invalid if the agency proceeded without or in excess of its jurisdiction; the agency failed to provide a fair trial or hearing; the agency committed a prejudicial abuse of discretion by proceeding in violation of law; the agency committed a prejudicial abuse of discretion by adopting an order not supported by adequate findings; or the agency committed a prejudicial abuse of discretion because its findings were not supported by substantial evidence.

**VII.    CLAIMS FOR RELIEF**

**A.    Count I: Violation of Section 401 of the CWA, 33 U.S.C. § 1341**

105.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

106.    A state's authority to issue a 401 certification and to impose conditions through such a certification is derived from the CWA.

107.    The Purported 401 Certification violates section 401 of the CWA and exceeds the scope of authority under section 401 of the CWA in at least nine ways.

108.    First, Defendant Sobeck's issuance of the Purported 401 Certification on behalf of the SWRCB exceeded the state's authority under CWA section 401 because YCWA had no application for a 401 certification pending at the time Defendant Sobeck issued the Purported

401 Certification.  Defendant Sobeck denied YCWA's last 401 certification application without prejudice in 2019 and YCWA has not submitted a new certification request.

109.    Second, Defendant Sobeck issued the Purported 401 Certification without formal or even written notice to YCWA, in violation of section 401's implicit notice requirement.  The SWRCB's September 21, 2017 notice of YCWA's prior application for a 401 certification was no longer effective because: (a) in 2018, YCWA withdrew that application at the SWRCB's request; and (b) in 2019, Defendant Sobeck denied without prejudice the application for a 401 certification that YCWA filed in 2018.

110.    Third, the 401 Certification exceeds the scope of CWA section 401 by imposing conditions to address environmental conditions that are caused by actions or activities of third parties and that are not attributable to the YRDP.  These conditions include, but are not limited to:

a.    Conditions 1, 27, 31, and 32, under which the SWRCB could compel YCWA to comply with provisions in the Bay-Delta Plan and/or future updates thereto that mitigate for conditions caused by other water diverters;

b.    Condition 20, under which the SWRCB's Executive Director could compel YCWA to provide fish passage above the USACE's Englebright Dam; and

c.    Condition 12, which would require YCWA to prepare a restoration plan to remedy habitat conditions that were caused by hydraulic mining and the USACE's Englebright and Daguerre Point Dams.

111.    Fourth, CWA section 401 only authorizes conditions to address a project's point source discharges, not the entire "activity" involved in the relevant application for a federal permit or license.  40 C.F.R. § 121.1(f), (n); 85 Fed. Reg. at 42,234.  The Purported 401

Certification improperly includes conditions that do not address the YRDP's point source discharges, including but not limited to: Conditions 4 (monitoring and adaptive management), 5 (spill reduction), 6 (closures at Lohman Ridge Diversion Tunnel), 8 (large woody material), 9 (sediment management), 11 (aquatic invasive species management), 12 (Lower Yuba River habitat restoration), 13 (New Bullards Bar Reservoir fishery), 14 (recreation facilities), 17 (hazardous materials), 18 (coordinated operations), 19 (construction and maintenance), 21 (mercury management), 24 (no net loss of wetland or riparian habitat functions), 27 (general reservation of authority), 28 (general reservation of authority due to climate change), 29 (notice and opportunity to be heard), 32 (consistency with Porter-Cologne and CWA section 303 standards), 36 (modifications in response to violations), 37 (Executive Director), 39 (compliance with all applicable federal, state, or local laws), 43 (storage of hazardous chemicals away from watercourses), 45 (compliance with National Pollutant Discharge Elimination System General Permit for Storm Water Discharges), and 46 (compliance with statewide National Pollutant Discharge Elimination System Permit for Residual Aquatic Pesticide Discharges).

112.    Fifth, the Purported 401 Certification's conditions exceed the scope of authority under CWA section 401 because some conditions are unrelated to water quality and are not necessary to ensure compliance with water quality standards, including but not limited to Conditions 4(e) and 20.  *See* 85 Fed. Reg. at 42,253; *PUD No. 1 of Jefferson Cty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 712 (1994) ("The State can only ensure that the project complies with 'any applicable effluent limitations and other limitations, under [33 U.S.C. §§ 1311, 1312]' or certain other provisions of the Act, 'and with any other appropriate requirement of State law.'") (citation omitted); *Am. Rivers, Inc. v. FERC*, 129 F.3d 99, 107 (2d Cir. 1997) (holding that

"[s]ection 401(d) . . . restricts conditions that states can impose to those affecting water quality.") (citation omitted).

113.     Sixth, conditions in a 401 certification must be "necessary" to assure compliance with "appropriate requirement[s] of State law."  33 U.S.C. § 1341(d).  Any conditions imposed in the certification must be accompanied by an explanation of "why the condition is necessary to assure that the discharge from the proposed project will comply with water quality requirements," 40 C.F.R. § 121.7(d)(1)(i), and a citation to the relevant "federal, state, or tribal law that authorizes the condition," *id.* § 121.7(d)(1)(ii).  The SWRCB did not provide such an explanation and or such citations in the Purported 401 Certification.

114.     Seventh, the issuance of, and conditions imposed in, the Purported 401 Certification by Defendant Sobeck violate numerous California laws, as set forth in Counts V through XII below.  Conditions that violate state law cannot be necessary to assure that YCWA complies with "appropriate requirement[s] of State law," 33 U.S.C. § 1341(d), and thus fall outside the scope of conditions authorized under CWA section 401.

115.     Eighth, once a state acts on a 401 certification request, CWA section 401 does not provide an ongoing role for the state to enforce 401 certification conditions or unilaterally modify the 401 certification. *Id.* § 1341(a)(5); 40 C.F.R. § 121.11(c); 85 Fed. Reg. at 42,275.  States have one year to act upon a request for certification, and may not extend that period by exercising ongoing enforcement authority. 33 U.S.C. § 1341(a)(1); 85 Fed. Reg. at 42,279.  Instead, federal licensing or permitting agencies have sole responsibility for enforcement of certification conditions.

116.     The Purported 401 Certification improperly includes conditions that would allow the SWRCB to unilaterally modify the Purported 401 Certification and/or exercise ongoing

enforcement authority over the certification conditions, which exceed the SWRCB's authority under section 401(a)(1) and (a)(5).  Such conditions include but are not limited to: Conditions 1(D), 4(E), 4(F), 5(A)-(C), 6, 8-14, 16, 18-22, 25-30, 33, 35-38, 41, 44, and 46.

117.    Ninth, CWA section 401 only authorizes a state to certify whether a project will comply with existing water quality standards.  33 U.S.C. § 1341(a) (referencing 33 U.S.C. § 1313).  Proposed state water quality standards are not water quality standards until they are approved by EPA.  *Id.* § 1313(c)(3).  The Purported 401 Certification's conditions, including but not limited to Conditions 1(D), 27, 28, and 31-32, exceed the scope of authority under CWA section 401 because they attempt to require YCWA to comply with water quality criteria from a proposed update to the Bay-Delta Plan, which the SWRCB has not yet adopted and EPA has not approved.  Conditions 1(D), 27, 28, and 31-32 also improperly circumvent the limitation in section 401(a)(1) that the state must act upon a request for 401 certification within one year, by allowing the SWRCB to impose new conditions on the YRDP beyond the one-year statutory period.

118.    Accordingly, the Purported 401 Certification's conditions violate CWA section 401.

**B.      Count II: Violation of the Supremacy Clause of the U.S. Constitution**

119.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

120.     Under the Supremacy Clause of the United States Constitution, a state action is preempted when it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  U.S. Const. art. VI, cl. 2.

121.    With limited exception, the FPA occupies the field of hydroelectric regulation entirely.

122.    Section 401 of the CWA provides a narrow exception to FERC's authority to regulate hydroelectric projects under the FPA, preserving a limited amount of state authority.

123.    Defendant Sobeck's issuance of the Purported 401 Certification was an action taken under the color of state action.

124.    The Purported 401 Certification exceeds the scope of authority authorized under CWA section 401 in at least nine different ways, as set forth in paragraphs 108 to 117.

125.    Because the State is not authorized by CWA section 401 to impose the conditions set forth in the Purported 401 Certification, Defendant Sobeck's imposition of such conditions on behalf of the SWRCB invades FERC's jurisdiction as reserved by the FPA and stands as an obstacle to FERC's exercise of its authority under the FPA.

126.    The Purported 401 Certification conditions, which exceed the scope of section 401 of the CWA, are preempted by the Supremacy Clause.

C.    **Count III: Violation of the Fourteenth Amendment to the U.S. Constitution (Procedural Due Process)**

127.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

128.    The Fourteenth Amendment to the U.S. Constitution prohibits states from depriving "any person of . . . property . . . without due process of law."  U.S. Const. amend. XIV, § 1.

129.    At a minimum, procedural due process requires that a person be given "notice of the case against him and [an] opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (citation omitted).

130.    The California Legislature created YCWA specifically to address the "water problems in the County of Yuba" and, in doing so, found that YCWA "is necessary for the

conservation, development, control and use of said water for the public good and for the protection of life and property therein." 1959 Cal. Stat. 2798; Cal. Water Code App. § 84-26. YCWA's activities, including its operation of the YRDP, therefore, are inextricably intertwined with the rights and needs of the people of the County of Yuba in addressing the county's water problems.

131. YCWA has a protected property interest in the YRDP, as the owner of the YRDP facilities, and the land on which the YRDP is located.

132. In purporting to delegate all authority to issue the Purported 401 Certification to Defendant Sobeck, the Defendant SWRCB Members purported to act under color of state law. In issuing the Purported 401 Certification, Defendant Sobeck acted under color of state law.

133. The Purported 401 Certification purports to regulate the YRDP. The Purported 401 Certification's conditions alter YCWA's rights by requiring YCWA to make changes to its operation of the YRDP and to undertake costly actions.

134. YCWA was not given formal or even written notice and the opportunity to be heard on the need for the Purported 401 Certification's conditions, prior to the issuance of the Purported 401 Certification and its transmittal to FERC. YCWA received only one-day informal, oral notice from Defendant Sobeck prior to the issuance of the Purported 401 Certification. The SWRCB and its Defendant SWRCB Members did not act on YCWA's Petition for Reconsideration of the Purported 401 Certification.

135. Defendant Sobeck violated YCWA's procedural due process rights by issuing the Purported 401 Certification without public process, public proceeding, or any opportunity for YCWA to address any of the information on which the 401 Certification was based.

**D.    Count IV: Violation of the Fourteenth Amendment to the U.S. Constitution (Substantive Due Process)**

136.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

137.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides protection from economically burdensome regulations that are arbitrary and not rationally related to a legitimate government interest. U.S. Const. amend. XIV.

138.    In issuing the Purported 401 Certification, Defendant Sobeck acted under color of state law. The SWRCB and the Defendant SWRCB Members did not act on YCWA's Petition for Reconsideration to address the problems of the Purported 401 Certification issued by Defendant Sobeck.

139.    The California Legislature created YCWA specifically to address the "water problems in the County of Yuba" and, in doing so, found that YCWA "is necessary for the conservation, development, control and use of said water for the public good and for the protection of life and property therein."  1959 Cal. Stat. 2798; Cal. Water Code App. § 84-26. YCWA's activities, including its operation of the YRDP, therefore, are inextricably intertwined with the rights and needs of the people of the County of Yuba in addressing the county's water problems.

140.    YCWA has a protected property interest in the YRDP, as the owner of the YRDP, and the land on which the YRDP is located.

141.    The Purported 401 Certification's conditions require YCWA to make changes to its operation of the YRDP and to undertake costly actions.  These actions are not rationally related to a legitimate government interest because they (a) would make YCWA responsible for mitigating environmental conditions caused by the USACE's Englebright Dam, historic

hydraulic mining, and diversion of water by other water diverters in the Yuba River watershed; (b) are unrelated to YCWA's own activities; and (c) do not address point source discharges.

142.    In issuing the Purported 401 Certification with such conditions, Defendant Sobeck imposed burdensome regulations on YCWA that are not rationally related to a legitimate government interest, in violation of the Fourteenth Amendment.

**E.    Count V: Lack of Jurisdiction (Violation of Cal. Code Regs. tit. 23, §§ 3835-3838)**

143.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

144.    Water Code section 13160 authorizes the SWRCB to issue 401 certifications under the CWA.

145.    The scope of the SWRCB's authority to issue a 401 certification is limited to responding to a filed, and pending, application for certification. Cal. Code Regs. tit. 23, §§ 3835-3838.

146.    California Code of Regulations, title 23, section 3831(b) defines "application" as "a written request for certification, including accompanying materials."

147.    YCWA had no pending application for a 401 certification at the time Defendant Sobeck issued the Purported 401 Certification on behalf of the SWRCB.

148.    Based upon the foregoing, Defendants acted in excess of the SWRCB's jurisdiction, and committed a prejudicial abuse of discretion, under Code of Civil Procedure section 1094.5 by failing to proceed in a manner required by California Code of Regulations, title 23, sections 3835-3838.

F.    **Count VI: Improper Delegation of Authority (Violation of Cal. Water Code §§ 175, 181, 13160)**

149.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

150.    The SWRCB was created by the California Legislature and generally is governed by the California Water Code.  The SWRCB may issue 401 certifications under Water Code section 13160, assuming that the SWRCB complies with applicable federal and state laws and regulations.

151.    Water Code section 175 specifies that the SWRCB consists of five members with specific qualifications and experience, each of whom is appointed by the Governor. The five appointed members of the SWRCB are clothed with a public trust to exercise their judgment and discretion. The exercise of judgment and discretion cannot be delegated in the absence of statutory authorization.

152.    Water Code section 181 states that "[t]hree members of the board shall constitute a quorum for the purpose of transacting any business of the board."

153.    Pursuant to Water Code section 13160, the authority to issue 401 certifications is vested with the SWRCB as a board of the Defendant SWRCB Members, not Defendant Sobeck or any other member of the SWRCB's staff.

154.    No statute granted authority to the appointed members of the SWRCB to delegate powers or public trust duties held by the SWRCB, collectively, to Defendant Sobeck or to any staff member or individual in relation to the issuance of the Purported 401 Certification.

155.    No statute authorized the SWRCB to promulgate regulations that allow actions that are not permitted by statute or that conflict with constitutional principles of due process.  No statute authorized the SWRCB to promulgate regulations that allow the SWRCB, generally, or

the Defendant SWRCB Members, specifically, to delegate their public trust responsibilities in relation to the Purported 401 Certification to Defendant Sobeck or any other employee of the SWRCB.

156.   Notwithstanding the above limitations of authority, the SWRCB's regulations, and specifically California Code of Regulations, title 23, section 3838(a), purport to provide complete delegation of the SWRCB's discretion, judgment, and authority to issue 401 certifications for FERC's relicensing of hydroelectric projects like the YRDP to Defendant Sobeck, as the SWRCB's Executive Director, without a hearing and without a vote of a quorum of the SWRCB.

157.   Defendant Sobeck issued the Purported 401 Certification outside the public's observation; without prior notice to YCWA; without any public proceeding or participation; and without any opportunity for YCWA to address any of the information on which the Purported 401 Certification was based.

158.   The Purported 401 Certification was issued by Defendant Sobeck based upon the sections of the regulations purporting to delegate authority to the Executive Director, but the Purported 401 Certification is invalid because those regulations violate law and the Executive Director did not have valid legal authority to take this action.

159.   Although the Purported 401 Certification was never adopted by a quorum of the SWRCB and the Defendant SWRCB Members, the Purported 401 Certification was purportedly issued by Director Sobeck in violation of Water Code section 181, which requires that actions of the SWRCB be taken with  by vote of the members of the Board.

160.   The Purported 401 Certification includes terms and conditions under which Defendant Sobeck, a member of the SWRCB staff, purports to grant to herself and other

members of the SWRCB staff ongoing authority to modify those terms and conditions, including but not limited to terms and conditions relating to the Bay-Delta Plan that have not yet been adopted.

161.    The purported ongoing delegation of authority to SWRCB staff to modify the 401 Certification allows staff to continue to act outside the public's observation; without any public notice or participation; and without any opportunity for YCWA to address or rebut future modifications—all in violation of law.

162.    Based upon the foregoing, Defendant Sobeck, the SWRCB, and the Defendant SWRCB Members proceeded without, or in excess of statutory or regulatory authority, and committed a prejudicial abuse of discretion by failing to proceed in a manner required by law, under Code of Civil Procedure section 1094.5.

**G.    Count VII: Violation of Bagley-Keene Open Meeting Laws (Cal. Gov't Code § 11120 et seq.)**

163.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

164.    Pursuant to Water Code section 13160, the authority to issue 401 certifications is vested with the SWRCB.

165.    California's requirement of governmental transparency is codified in Government Code section 11120 et seq., the Bagley-Keene Open Meeting Act.

166.    The SWRCB is a "state body" to which Bagley-Keene applies.  Cal. Gov't Code § 11121(a).

167.    The SWRCB, and its Defendant SWRCB Members, never considered the Purported 401 Certification at any public meeting.   Defendant Sobeck's formulation and issuance of the Purported 401 Certification, behind closed doors and without any public notice or

proceedings, as a purported action of the SWRCB, violated the open-meeting requirements that Bagley-Keene sets for actions of the SWRCB.

168.   Based upon the foregoing, Defendant Sobeck, the SWRCB, and the Defendant SWRCB Members proceeded without, or in excess of jurisdiction and committed a prejudicial abuse of discretion by failing to proceed in the manner required by law, under Code of Civil Procedure section 1094.5.

## H.   Count VIII: Failure to Conduct a Fair Hearing (Cal. Civ. Proc. Code § 1094.5)

169.   Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

170.   Water Code section 13330(e) states that Code of Civil Procedure section 1094.5 governs judicial review of 401 certifications.  Under Code of Civil Procedure section 1094.5, subdivision (b), agency action made as the result of a proceeding in which by law a hearing is required to be given is invalid if the agency failed to provide a "fair trial."

171.   The SWRCB staff, without providing notice to YCWA, drafted the terms and conditions of the Purported 401 Certification. SWRCB staff denied YCWA any opportunity to comment on or present evidence to rebut the information relied upon by the SWRCB staff in drafting the Purported 401 Certification.  Without any public notice or proceedings, Defendant Sobeck issued the Purported 401 Certification on behalf of the SWRCB.

172.   Based on information and belief, Defendant Sobeck and the SWRCB allowed Andrew Sawyer to participate in the development of the Purported 401 Certification by supervising the work of SWRCB staff counsel Marianna Aue on that certification.  Based on information and belief, Mr. Sawyer is an officer, director, or other representative of the Mother Lode Chapter of the Sierra Club elected by that chapter's members.  Through FWN, the Mother

Lode Chapter of the Sierra Club participated in FERC's proceedings concerning the proposed relicensing of YCWA's YRDP in a manner adverse to YCWA.

173.    Other than filing its Petition for Reconsideration, on which the SWRCB has taken no action, YCWA was unable, in the exercise of reasonable diligence, to produce evidence to the SWRCB that demonstrates that the terms and conditions of the Purported 401 Certification are improper because Defendant Sobeck and the SWRCB failed to provide YCWA with an opportunity to participate in a fair hearing and failed to allow YCWA to present evidence prior to the issuance of the Purported 401 Certification.

174.    Based upon the foregoing, and under Code of Civil Procedure section 1094.5, Defendant Sobeck and the SWRCB proceeded without, or in excess of jurisdiction; failed to provide YCWA with a fair hearing; and committed a prejudicial abuse of discretion by failing to proceed in the manner required by law in issuing the Purported 401 Certification.

**I.      Count IX: Failure to Consider Relevant Evidence (Cal. Civ. Proc. Code § 1094.5)**

175.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

176.    An agency decision is an abuse of discretion if the agency order or decision is not supported by the findings or the findings are not supported by the evidence. Cal. Civ. Proc. Code § 1094.5(b).

177.    In issuing the Purported 401 Certification, Defendant Sobeck, as the purported delegate of the SWRCB and its Defendant SWRCB Members, ignored evidence, ignored scientific findings, and failed to consider the potential impacts of the imposition of the conditions of the Purported 401 Certification including, but not limited to, the following:

a.      The Purported 401 Certification failed to analyze how the imposition of its Condition 1(D) could result in severe impacts to water temperatures to support Yuba River salmonids, hydroelectric generation, and agricultural water supplies.

b.      The Purported 401 Certification failed to analyze how the imposition of its Condition 20 is not viable, is not likely to result in fishery benefits, or substantial benefits, and would likely result in significant costs to YCWA ranging between $624 million and $1.03 billion.  For example, Englebright Dam, owned by the USACE, has created an impassible barrier to salmon and other fish since 1941 and stores potentially toxic sediment.  No analysis has been provided regarding the ability of fish to survive, or thrive, in the habitat above Englebright Dam and the height of a fish ladder past Englebright Dam would be taller than has ever been proven effective.

c.      The Purported 401 Certification failed to analyze the well-documented impacts of historic hydraulic mining on the river's habitat, and the impacts resulting from the construction of Daguerre Point and Englebright Dams to impound hydraulic debris and associated toxic materials.

d.      The Purported 401 Certification further ignored evidence that the imposition of its Condition 12 and its associated actions (1) would not be economically feasible; (2) would not be physically feasible; and (3) would not likely support habitat for the fish in question.

e.      The Purported 401 Certification failed to analyze how the imposition of its Condition 6 would affect YCWA's ability to derive hydroelectric generation at YCWA's New Colgate powerhouse and failed to consider the evidence that the imposition of this condition would provide little environmental benefit but result in a significant financial

burden.  For example, FERC and the USACE found that the additional tunnel closures would only prevent the entrainment of about 21 fish a year, that fish that went into the tunnel would not be subject to any turbines, and that there was evidence fish diverted into the tunnel actually could swim back up it.  Meanwhile, the tunnel closures would cost YCWA approximately $22 million—not adjusted for inflation—in lost hydroelectric generation revenue over a license's 50-year term.

f.      The Purported 401 Certification failed to analyze the impact of the imposition of its Condition 7 on YCWA's ability to operate its New Colgate powerhouse, particularly as to operations in compliance with a 1993 agreement with California Department of Fish and Wildlife.  The Purported 401 Certification failed to consider evidence that imposition of its Condition 7 would not make the lower Yuba River cooler, even though it would result in significant costs to YCWA.

g.      The Purported 401 Certification failed to analyze the millions of dollars in lost revenue and increased costs that will result over the term of the license. The Purported 401 Certification further failed to consider the significant indirect impacts of this loss and increased costs on the disadvantaged communities and the local economy.

h.      The Purported 401 Certification, failed to analyze how it may contribute to, impact, or otherwise cause overdraft of Yuba County's groundwater basins.

i.      The Purported 401 Certification failed to consider its impact on YCWA's ability to transfer water to communities that need additional sources of water, which advances California's policy of providing water supplies to regions in need.

178.   YCWA presented extensive information to demonstrate the impacts and failures of the Purported 401 Certification described in the preceding paragraph with YCWA's Petition

for Reconsideration, but the SWRCB and the Defendant SWRCB Members have not acted on, or considered, that Petition for Reconsideration.

179.    Based upon the foregoing, and under Code of Civil Procedure section 1094.5, Defendant Sobeck, the SWRCB, and the Defendant SWRCB Members committed a prejudicial abuse of discretion by failing to proceed in the manner required by law by issuing the Purported 401 Certification, which is not supported by findings, and by issuing findings that are not supported by the evidence.

**J.    Count X: Failure to Comply with CEQA (Cal. Pub. Res. Code §§ 21005, 21168)**

180.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

181.    California imposes obligations on public agencies, pursuant to CEQA to review, analyze, and identify the significant effects of a proposed project and any feasible alternatives or mitigation measures that will avoid or substantially lessen such significant effects.  Cal. Pub. Res. Code §§ 21002, 21002.1, 21080(a), 21081.

182.    The SWRCB is a public agency within the meaning of CEQA.

183.    A 401 certification meets the requirements of a project that is subject to CEQA review.

184.    Defendants failed to do any environmental review under CEQA prior to, or in connection with the issuance of the Purported 401 Certification.  Defendant Sobeck nonetheless issued the Purported 401 Certification.

185.    CEQA violations are subject to a review for prejudicial abuse of discretion and review of whether the SWRCB's findings were supported by substantial evidence in light of the whole record. Cal. Pub. Res. Code §§ 21168, 21168.5.  By failing to undertake CEQA review,

the SWRCB failed to proceed in the manner required by law and committed a prejudicial abuse of discretion.

**K.**     **Count XI: Action in Excess of Jurisdiction and Prejudicial Abuse of Discretion Due to Failure to Comply with the CWA and FPA (Cal. Civ. Proc. Code § 1094.5)**

186.    Plaintiff repeats and incorporates by reference every allegation in the preceding paragraphs.

187.    As alleged in Count I, the Purported 401 Certification violates section 401 of the CWA and exceeds the scope of the SWRCB's authority under section 401 of the CWA.

188.    As alleged in Count II, the Purported 401 Certification invades FERC's jurisdiction as reserved by the FPA and stands as an obstacle to FERC's exercise of its authority under the FPA.

189.    The Purported 401 Certification's conditions, which exceed the scope of section 401 of the CWA, are preempted by the Supremacy Clause.

190.    Based upon the foregoing, the SWRCB proceeded without, or in excess of jurisdiction and committed a prejudicial abuse of discretion under California Code of Civil Procedure section 1094.5 by failing to proceed in the manner required by law.

**L.**     **Count XII: Violation of California's Constitution and the Porter-Cologne Water Quality Control Act**

191.    YCWA repeats and incorporates by reference every allegation in the preceding paragraphs.

192.    As interpreted by the California Supreme Court, Article X, section 2 of the California Constitution requires that state decisionmakers assess the water costs of their decisions for competing uses of water and seek to minimize those costs.

193.    Porter-Cologne contains similar statutory mandates in Water Code sections 13000 and 13001.

194.    The Purported 401 Certification is inconsistent with the requirements above because it contains no assessment of its terms' effects on all demands being made of the waters of the Yuba River.

195.    The Purported 401 Certification failed to explain how its terms comply with Article X, section 2's and Porter-Cologne's fundamental policies.

196.    The Purported 401 Certification failed to consider relevant factors as required by Article X, section 2 of the California Constitution and Porter-Cologne; failed to explain why relevant data that was readily available from FERC's proceedings was disregarded; and failed to explain a rational connection between the facts found and the choice made, to the extent choices were made in light of the Purported 401 Certification's significant sub-delegations of future decisions to SWRCB staff.

197.    Based upon the foregoing, by issuing the Purported 401 Certification in violation of Article X, section 2 of the California Constitution and Porter-Cologne, Defendants failed to proceed in the manner required by law and committed a prejudicial abuse of discretion.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that this Court:

a.   Declare that the Purported 401 Certification includes requirements that exceed the State of California's authority under the CWA, are preempted by and inconsistent with the FPA, violate the U.S. Constitution, and violate California state law;

b.   Restrain Defendant Sobeck and the Defendant SWRCB Members from enforcing the Purported 401 Certification;

c.   Order Defendant Sobeck and the Defendant SWRCB Members to withdraw the Purported 401 Certification;

d.  Order Defendant Sobeck and the Defendant SWRCB Members promptly to notify FERC of this withdrawal;

e.  In the alternative, issue a writ in the nature of mandamus pursuant to 28 U.S.C. § 1651 directing all Defendants to vacate the Purported 401 Certification;

f.  Award attorneys' fees and costs pursuant to 42 U.S.C. section 1988(b), California Code of Civil Procedure section 1021.5, California Government Code section 800, and such other and further relief as may be determined appropriate; and

g.  Grant such other and further relief as may be just and proper.


Respectfully submitted this 13th day of November, 2020.


By: _Michael F. McBride_
     Michael F. McBride, DC # 243998
     Michael A. Swiger, DC # 367307
     Jenna R. Mandell-Rice, DC # 1021549
     Sharon L. White, DC # 997546

     VAN NESS FELDMAN, LLP
     1050 Thomas Jefferson Street, NW
     Washington, DC 20007
     Phone: 202-298-1800
     mfm@vnf.com
     mas@vnf.com
     jrm@vnf.com
     slw@vnf.com


     *Attorneys for Yuba County Water Agency*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2020, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notification to the attorneys of record in this case.

*/s/ Michael F. McBride*
Michael F. McBride, DC # 243998