# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUBA COUNTY WATER AGENCY,<br><br>               Plaintiff,<br><br>        v.<br><br>EILEEN SOBECK, in her official capacity as Executive Director of the California State Water Resources Control Board, *et al.*,<br><br>               Defendants. | Case No. 1:20-cv-03297 (TNM) |

## **MEMORANDUM ORDER**

This case involves a California water agency suing a state-wide board (again in California) over water-quality regulations for a river development in California. The Defendants move to transfer this case to the Eastern District of California. Upon consideration of the parties' filings and the relevant law, the Court will grant the motion.

## **I.**

Plaintiff Yuba County Water Agency ("YCWA") is a local agency tasked with managing water conservation and development projects in Yuba County, California. Compl. ¶ 14, ECF No. 1.[1] It owns and operates the hydroelectric Yuba River Development Project ("the project"), which it built in the late 1960s to supply water and mitigate flooding in Yuba County. *Id.* ¶¶ 1, 14. For the project, the Federal Energy Regulatory Commission ("FERC") issued YCWA a license, which required renewal upon its expiration in 2016. *Id.* ¶ 26. As part of the renewal process, and in accordance with Section 401 of the Clean Water Act, YCWA had to seek a water

---

[1] The Court focuses on the facts necessary to its determination of the motion to transfer.

quality certification from the California State Water Resources Control Board ("the State Board"). *Id.* ¶ 2.

At the heart of this dispute is a purported certification ("the certification") issued by the State Board in July 2020. *Id.* ¶ 3. It imposes on YCWA certain conditions and obligations, including complying with state water quality standards. *Id.* ¶ 61. YCWA argues that the State Board waived its certification authority by not acting on YCWA's initial application within one year of its filing. *Id.* ¶¶ 41, 81. FERC agreed and issued a finding that the State Board had waived the regulatory authority granted to it under Section 401. *Id.* ¶¶ 48, 50. The State Board filed a Petition for Review of FERC's waiver determination before the U.S. Court of Appeals for the Ninth Circuit. *Id.* ¶ 51. YCWA has intervened in the defense of FERC's decision, and the case is pending before that court. *Id.* ¶ 51; *see Cal. State Water Res. Control Bd. v. FERC*, No. 20-72782 (9th Cir. filed Sept. 17, 2020).

YCWA also filed two lawsuits of its own—one in this Court and one in California state court. *See* Defs. Mot. to Dismiss, Transfer, or Stay and Mem. of P. & A. in Supp. ("Mot.") Ex. 2, ECF No. 11-2. In California, YCWA sought a writ directing the State Board to vacate the certification. *Id.* at 35.[2] YCWA similarly asked this Court to enjoin enforcement of the certification, declare that its regulations violate various federal and state laws, and direct the State Board to withdraw it. Compl. at 41–42. The State Board moves to dismiss the complaint, or in the alternative transfer it to the Eastern District of California, or at least stay the case pending the outcome of proceedings before the Ninth Circuit. *See* Mot. at 55. After the Court ordered YCWA to respond to the question of transfer only, YCWA filed an opposition. Resp. of

---

[2] All page citations refer to the page numbers that the CM/ECF system generates.

Pl. Yuba Cnty. Water Agency to Mot. of Defs. Sobeck, Et Al. to Transfer ("Opp'n"), ECF No. 17. This transfer issue is now ripe.

## II.

The transfer statute permits a district court to "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When considering a motion to transfer, courts undertake a two-step inquiry. A court first determines whether venue is proper in the proposed transferee court—the district where the case "might have been brought." *Id.* If so, the court then weighs "a number of case-specific factors" to decide whether transfer is warranted. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *see Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (explaining that courts use their "broad discretion to balance" these factors). The burden rests with the party seeking transfer. *Aftab*, 597 F. Supp. 2d at 79.

## III.

The Court begins by confirming that this action may have commenced in the Eastern District of California, which YCWA never disputes. The Court then finds that the private- and public-interest factors support transfer.[3]

### A.

For starters, venue was proper in the Eastern District when YCWA filed its Complaint. *First*, an action may commence in any judicial district in which "a defendant in the action resides, if all defendants are residents of the State in which the district is located." 28 U.S.C.

---

[3] The Court need not address any arguments on its jurisdiction before reaching the transfer question. *See Aftab*, 597 F. Supp. 2d at 79 ("Although the defendants have moved to dismiss for lack of subject-matter jurisdiction, the motion to transfer venue under § 1404 may be addressed first.")

3

§ 1391(b)(1). Defendants are sued in their official capacities as members of the State Board, headquartered in Sacramento in the Eastern District. *See* Cal. Water Code § 181 ("The [State B]oard shall maintain its headquarters in Sacramento . . . ."); *see also Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where . . . he performs his official duties."). *Second*, venue also properly lies in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, the State Board issued the certification in the Eastern District, which is also the location of the project. *See* Compl. ¶¶ 25–33, 52–56. For either reason, YCWA could have filed this case in the Eastern District, and it has not argued otherwise.

### B.

The Court next considers the private- and public-interest factors. Both favor transfer.

### 1.

Courts generally consider the following private-interest factors: "the parties' choices of forum, where the claim arose, the convenience of the parties and witnesses, and the ease of access to sources of proof." *Montgomery v. Barr*, --- F. Supp. 3d ---, No. 1:20-CV-03214 (TNM), 2020 WL 6939808, at *6 (D.D.C. Nov. 25, 2020) (cleaned up). On balance, these factors support transfer.

As YCWA notes, *see* Opp'n at 3, a plaintiff's choice of forum is ordinarily entitled to deference. *Trout Unlimited v. USDA*, 944 F. Supp. 13, 17 (D.D.C. 1996). But that deference recedes when the district is not the plaintiff's home and the forum has a tenuous connection to the controversy. *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979). More, "when the forum preferred by the plaintiff is not his home forum, and the defendant

4

prefers the *plaintiff's* home forum, there is little reason to defer to the plaintiff's preference." *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018) (emphasis in original). That is the case here, where both YCWA and the State Board are in the Eastern District.[4] So the Court does not give YCWA's choice any deference.

The defendants' choice of forum "is not ordinarily entitled to deference" but is still "a consideration when deciding a § 1404(a) motion." *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 269 (D.D.C. 2018). Here, the State Board's preferred forum is the Eastern District. Mot. at 38–44. So "[t]o the extent this factor carries any heft," it supports transfer. *Aishat*, 288 F. Supp. 3d at 269.

The third factor concerns where the claim arose. "Transfer is favored when the material events that form the factual predicate of a plaintiff's claim did not occur in [its] chosen forum." *Id.* (cleaned up). "Where claims arise from actions in several fora, this factor does not weigh in favor or against transfer." *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 32 (D.D.C. 2013) (cleaned up). Here, the project exists in the Eastern District. Compl. ¶¶ 14–15. YCWA filed, withdrew, and resubmitted its application for a certification all in the Eastern District. *Id.* ¶¶ 39, 42–43. And the State Board issued the certification in the Eastern District. *Id.* ¶ 57.

YCWA does not appear to dispute that this case mainly sprung from the Eastern District; it instead points to the involvement of FERC, which also received YCWA's application and "will enforce the new terms of the certification as part of the new license" if the certification survives judicial scrutiny. Opp'n at 6. FERC's involvement, though, is almost exclusively

---

[4] The State Board asserts that YCWA is at home in the Eastern District, citing the YCWA's statutory authority over only Yuba County, and the location of its headquarters in Marysville, California. Mot. at 40. The State Board does not address this point in its opposition, so the Court accepts it as true.

forward-looking; this case may affect FERC's future obligations, but FERC's actions hardly "form[ed] the factual predicate of [YCWA's] claim[s]." *Douglas*, 918 F. Supp. 2d at 32. The claims here pertain to the State Board's legal authority, as well as the legality of the many obligations within the certification. Compl. at 23–41. Even if looking ahead to the future effects of this case's outcome is appropriate on this factor, the State Board's regulations would play out in Yuba County—not here. At best for YCWA this third factor is neutral, as related events occurred in both districts. But the factual predicate for this dispute really occurred in the Eastern District.[5]

Next, the convenience of the parties also supports transfer. Both parties reside in the Eastern District. *See supra* at 5 & n.4. Although Plaintiff's counsel practices in this district, *see* Compl. at 42, defense counsel is in California, *see* Mot. at 55. Regardless, "the location of counsel carries little, if any, weight" under § 1404(a). *State v. U.S. Army Corps of Engineers*, 304 F. Supp. 3d 56, 66 (D.D.C. 2018) (collecting cases). Most importantly, there is no suggestion that transfer would materially inconvenience either party.

Similarly, the Court assumes that the parties are correct that the remaining two private factors—convenience of the witnesses and access to sources of proof—are largely neutral given the expected course of the case. *See* Opp'n at 7; Defs.' Reply in Supp. of Mot. to Transfer ("Reply") at 10. But if they swing in any direction, it is toward transfer. *Cf. Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 308 (D.D.C. 2017) ("If this case is

---

[5] YCWA's heavy reliance on *Exelon Generation Co., LLC v. Grumbles*, 380 F. Supp. 3d 1 (D.D.C. 2019), is misplaced. *See* Opp'n at 4–5. To be sure, that case involved a similar fact pattern and legal challenges. But there Maryland authorities alleged that venue was improper under 28 U.S.C. § 1406(a) so that the case could have never been filed in this district. *Exelon*, 918 F. Supp. 2d at 11–14. They did not seek discretionary transfer under § 1404 as the State Board does here, and the court did not reach that question, which involves a different legal standard. *Id.* at 9, n.2.

eventually adjudicated solely based on an administrative record, that record presumably resides in the [Eastern District], where the adjudication of [YCWA's application] occurred, not in the District of Columbia.").

In sum, the private-interest factors slightly favor transfer.

**2.**

For public-interest factors, courts consider (1) the transferor and transferee courts' familiarity with the governing law, (2) the relative congestion of the two courts, and (3) "the local interest in deciding local controversies at home." *Montgomery*, 2020 WL 6939808, at *6. Overall these factors support transfer.

On the first factor, this case involves application of federal law, which this Court and the Eastern District are equally able to handle. *See Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 105 (D.D.C. 2010). But YCWA also raises eight of its twelve claims under California law. Compl. at 31–41. So this factor favors transfer, as the interests of justice are "best served by having a case decided by the federal court in the state whose laws govern the interests at stake." *Trout Unlimited*, 944 F. Supp. at 19.

Next, the Court considers the relative congestion of this District and the Eastern District. This factor weighs for transfer given the pendency of a related case in the Ninth Circuit. The parties agree that as of a few months ago, this District had a weighted average caseload of 291 cases per judgeship and the Eastern District had 698. *See* Mot. at 42; Opp'n at 8. YCWA also submits a declaration from one of its attorneys that adds statistics about the congestion in the Eastern District. *See* Opp'n Ex. 3, ECF No. 17-3. Of course, "the relative complexity of the two courts' dockets may not be reflected in [the] purely mathematical statistic" of the number of active cases. *W. Watersheds Project v. Jewell*, 69 F. Supp. 3d 41, 44 (D.D.C. 2014) (transferring

7

case despite higher case load in destination district). Even so, the stark difference in caseloads between the districts would typically militate against transfer.[6]

The Court is mindful, however, of the pending action in the Ninth Circuit reviewing FERC's determination on the waiver question. *See Cal. State Water Res. Control Bd. v. FERC*, No. 20-72782 (9th Cir. filed Sept. 17, 2020). The parties acknowledge that a ruling here has no practical effect unless the Ninth Circuit vacates FERC's order and directs it to issue a new license to YCWA. *See* Opp'n at 10; Reply at 12–13. This fact lessens the urgency of any ruling in this case. More importantly, conserving the resources of the federal judiciary *as a whole* marshals in favor of transferring these related claims to a district under the jurisdiction of the Ninth Circuit. Without transfer, the Ninth Circuit and D.C. Circuit could both independently adjudicate the legality of the State Board's certification. The Court seeks to avoid the judicial inefficiencies resulting from multiple—and possibly inconsistent—rulings on this issue. With transfer, the Ninth Circuit could consolidate any appeals if they are ripe at the same time, or it could at the very least issue controlling authority on the waiver question. The existence of the Ninth Circuit case thus tips this judicial-efficiency factor toward transfer.

Finally, "there is undoubtedly a local interest in deciding local controversies at home." *Montgomery*, 2020 WL 6939808, at *8. This factor weighs decisively in favor of transfer. As recounted above, *supra* at 5, here a local water authority in California sues a California state board over state regulations imposed on a project in California. *See supra* at 5. To be sure, the

---

[6] The parties disagree over what the relative caseloads would mean for the prospect of expeditiously resolving this case. *Compare* Opp'n at 10 *with* Reply at 11–13. But in weighing this "public-interest factor," the Court considers not merely any effects of transfer on this matter but the administration of justice more generally. *Cf. Stewart*, 487 U.S. at 30 (holding courts must weigh the "public-interest factors of systemic integrity and fairness that, in addition to the private concerns of the parties, come under the heading of 'the interest of justice'").

mere presence of the project in the Eastern District is not dispositive. *See Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008) (declining to transfer case to California district where 4,000 acres of "critical habitat" resided because protection of endangered species was national concern). But the project and the certification address water quality, resources, and infrastructure in specifically Yuba County, with the costs and benefits of California's regulations flowing to the local community. *See Trout Unlimited*, 944 F. Supp. at 19 (transferring case involving "water rights, environmental regulation, and local wildlife" because water project at issue was in transferee district and case "should be resolved in the forum where the people whose rights and interests are in fact most vitally affected by the suit" reside). In short, the outcome matters far more to Californians than to Washingtonians.

\*   \*   \*

Transfer is appropriate. The parties are all in California, the administrative actions underlying the dispute occurred in California, the effects of a judicial determination will be felt in California, and this case relates to federal and state cases pending in California.

**IV.**

For all these reasons, the Court will rely on its discretion to transfer the case. Accordingly, it is hereby

**ORDERED** that the Clerk of Court shall transfer this matter to the United States District Court for the Eastern District of California; and it is further

**ORDERED** that the Clerk of Court close this case.

**SO ORDERED.**

Dated: April 29, 2021                                       TREVOR N. McFADDEN, U.S.D.J.